IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

Civil No. 1:23-cv-00174

| | |
|---|---|
| Ronald Edward Young, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OF LAW IN** |
| | ) **SUPPORT OF DEFENDANTS'** |
| | ) **MOTION TO DISMISS** |
| Eric Keyes, acting in his individual capacity as a Williston police officer, and Nick Rintamaki, acting in his individual capacity as a Williston police officer, | ) |
| | ) |
| Defendants. | ) |

\*\*\*        \*\*\*        \*\*\*

## I. INTRODUCTION

Defendants Eric Keyes, acting in his individual capacity as a Williston police officer, and Nick Rintamaki, acting in his individual capacity as a Williston police officer (collectively, "Defendants" or "Officer Defendants") submit this memorandum of law in support of their Rule 12(b)(6) motion requesting dismissal of all claims asserted against them in this action. Plaintiff Ronald Edward Young's ("Plaintiff") Complaint fails to allege any objectively unreasonable force applied against him during his December 31, 2019 DUI traffic stop and arrest. Because the alleged force utilized was objectively reasonable and because Defendants' conduct did not violate Constitutional standards of which they were aware, Plaintiff has failed to state a cognizable excessive force claim and Defendants are entitled to qualified immunity from suit.

## II. LEGAL STANDARD

### A. Dismissal For Failure to State a Claim

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the court takes all facts alleged in the complaint to be true. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Id.* (citations omitted). The Court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint. *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* "[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims, . . ., rather than facts that are merely consistent with such a right.'" *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009), quoting *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.E.2d 868 (2009).

**B.     Courts May Consider Additional Materials**

Additionally, courts are allowed to consider video evidence in the context of motions to dismiss under Fed. R. Civ. P. 12(b)(6) without converting the motion into one for summary

judgment. Courts may consider materials that "(1) are part of the public record, (2) do not contradict the complaint, or (3) are necessarily embraced by the pleadings." *See*, *Ching v. City of Minneapolis*, 629 F. Supp. 3d 925, 933 (D. Minn. 2022) (internal quotations and citations omitted), rev'd and remanded sub nom. *Ching as Tr. for Jordan v. City of Minneapolis*, 73 F.4th 617 (8th Cir. 2023) (reversing district court's denial of qualified immunity to one of the officer defendants); *see also*, *Jackson v. Brooklyn Center*, No. 21-CV-2072, 2023 WL 2368032 (D.Minn. March 6, 2023) affrm'd sub nom by *Jackson v. City of Brooklyn Ctr.*, No. 23-1678, 2023 WL 6876550 (8th Cir. Sept. 28, 2023) (considering video/audio recordings from officer body worn cameras in considering Rule 12 motion for judgment on the pleading; citing numerous supporting cases).

  C.  **Excessive Force**

  The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. CONST. AMEND. IV. An excessive force claim under the Fourth Amendment requires an allegation of the use of excessive force by the government in connection with a seizure of the plaintiff by the government. *Graham v. Connor*, 490 U.S. 386, 393-396 (1989) 490 U.S. at 393-396. As Plaintiff alleges force was applied against him in furtherance of his arrest (i.e., he alleges a seizure), the objective reasonableness standard under *Graham v. Conner* applies to Plaintiff's excessive force claim under the Fourth Amendment.

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others,

and whether he is actively resisting arrest or attempting to evade arrest by flight.

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises. With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Id.* at 396-97 (citations and quotations omitted).

Although the "reasonableness" inquiry in an excessive force case is an objective one, without regard to the officer's subjective motive or intent (*id*. at 397), an excessive force claim under § 1983, whether under the Fourth or Fourteenth Amendment, cannot be supported by mere negligent or grossly negligent conduct as such conduct does not rise to the level of conduct that would be actionable under § 1983. *See Roach v. City of Fredericktown, Mo*., 882 F.2d 294, 297 (8th Cir. 1989) (officer's alleged negligence in pursuit of automobile did not rise to level of conduct which would sustain a claim under § 1983 of excessive force); *Daniels v. Williams*, 474 U.S. 327, 335-36 (1986) (a negligence claim does not support a § 1983 action); *Young v. City of Little Rock*, 249 F.3d 730, 734 (8th Cir. 2001) (same); *Brown v. City of Bloomington*, 280 F.Supp. 2d 889, 894 (D.Minn. 2003) (determining officer's firing of first bean bag round was objectively reasonable under circumstances presented, and firing of second slug round under mistaken belief it was also

a bean bag round did not establish a Fourth Amendment claim under § 1983 as the second live round simply constituted negligently employed deadly force – "[n]egligent conduct fails to establish a claim under section 1983." (citations omitted)); *Ansley v. Heinrich*, 925 F.2d 1339, 1344 (11th Cir. 1991) (holding that a district court did not err when it charged a jury in a Fourth Amendment excessive force case that "negligence, standing alone, is not a constitutional violation").

In addition, the conduct of each defendant must be separately analyzed as an individual can only be held liable for his or her own intentional conduct.

> Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed. Section 1983 does not sanction tort by association. An officer may be held liable only for his or her own use of excessive force.

*Smith v. City of Minneapolis*, 754 F.3d 541, 547-48 (8th Cir. 2014) (citations and quotations omitted). In the present case, excessive force is asserted against both Officer Keyes and Officer Rintamaki, and the allegations against each officer are essentially identical. While Plaintiff has asserted the Officers used excessive force to effectuate a DUI arrest, well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint. *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).

### D. Qualified Immunity

As Plaintiff has alleged a violation of his federal Constitutional rights, the Officer Defendants are entitled to qualified immunity from suit. As explained by the United States Supreme Court:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 818 ... (1982). Qualified immunity balances two important interests – the need to hold public officials accountable

> when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." [citation omitted].
> ***
> Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." ... Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved **prior to discovery**." .... Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."

*Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (bold added).

The United States Supreme Court has instructed that the issue of qualified immunity be resolved "at the earliest possible stage of the litigation." *Id.* (quotation omitted); *see Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011). This is because the defense is "an immunity from suit rather than a mere defense to liability" and "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Mathers v. Wright*, 636 F.3d at 399 (citing *Mitchell v. Forsyth*, 472 U.S. at 526). In addition, a "driving force behind the creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials be resolved prior to discovery." *Pearson*, 555 U.S. at 231 (quotation omitted).

> Qualified immunity protects government officials from liability under § 1983 when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 Led.2d 666 (2002). The test for whether an officer is entitled to qualified immunity is twofold: (1) whether the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815-16, 172 L.Ed.2d 565 (2009); *Henderson v. Munn*, 439 F.3d 497, 501-02 (8th Cir. 2006). If no reasonable factfinder could answer yes to both of these

questions, the officer is entitled to qualified immunity. *See Plemmons v. Roberts*, 439 F.3d 818, 822 (8th Cir. 2006).

*Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009). As explained by the Supreme Court of the United States:

> Although this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law. This Court has repeatedly told courts . . . not to define clearly established law at a high level of generality.
> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the fact of each case, and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue.
> ***
> . . . Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.

*Kisela v. Hughes*, 138 S.Ct. 1148, 1152-53 (2018) (per curiam) (numerous citations and quotations omitted).

### III. FACTS

#### A. The Excessive Force Allegations in Plaintiff's Complaint

In the Complaint, Plaintiff makes the following factual allegations:

**FACTS**

6) On December 31, 2019, Young was driving in the City of Williston.
7) At approximately 10:00 p.m., Keyes was on patrol.
8) Keyes activated his emergency lights and stopped Young due to an alleged improper turning movement by Young.

> 9) Young stopped his vehicle, and a traffic stop was conducted by Keyes and Rintamaki.
> 10) During the stop, Keyes observed indicia of alcohol intoxication. Field sobriety and other DWI-related tests were conducted by Keyes and Rintamaki.
> 11) After the tests were completed, Young, Keyes, and Rintamaki were all standing near the rear of Young's vehicle.
> 12) Without warning, Keyes forcefully grabbed Young's arm.
> 13) After Keyes grabbed Young's arm, he then commanded Young to put his hands behind his back.
> 14) Rintamaki grabbed Young from the other side.
> 15) Both officers threw Young to the ground. Because the officers held Young's arms, Young was unable to protect himself from injury as he was thrown to the ground.
> 16) Young repeatedly asked officers what they were doing to him.
> 17) Young tried to prevent injury to himself during the encounter, but officers controlled him and prevented him from doing so.
> 18) The officers put their weight on Young's back once he was on the ground. Officers continued to control and put Young's arms into a painful position.
> 19) Due to the force used by Keyes and Rintamaki, Young's glasses were broken. Young also sustained lacerations on his face and chin.
> 20) Due to the use of force by the defendants, Young suffered physical pain and injury, mental trauma, and emotional damages.
> [. . . .]
> 23) While seizing Young, the defendants used excessive force. The defendants grabbed Young's arms forcefully and threw him to ground, preventing Young from shielding himself from injury. The defendants remained on Young's back and continued causing pain upon him.
> 24) The defendants acted with evil intent or reckless indifference to the rights of Young.

Complaint, dated September 13, 2023 (doc. 1).

### B.    The Dash Camera and Officer Body Camera Video

In addition to the allegations raised in Plaintiff's Complaint, the Court may also review and consider the officer squad car dash camera and officer body camera video footage.  Said video files from Officer Eric Keyes' squad car and from Officer Keyes' body camera are filed herewith as Exhibits 1-2.  Wiederholt Affidavit.  The Officer Keyes' body camera video best shows the circumstances leading up to officers applying force to the Plaintiff to effectuate his DUI arrest.  The videos do not contradict the well-pled factual allegations in the Complaint.  However, to the

extent the Court were to determine that its consideration of the dash and body camera video would convert this Rule 12 motion into one for Summary Judgment, Defendants request the Court simply refuse to consider the videos and consider only the operative pleadings in deciding the instant Rule 12 motion.

IV. **ARGUMENT & ANALYSIS**

    A. **The Officer Defendants Are Entitled To Dismissal for Failure to State a Claim and Are Entitled to Qualified Immunity Because the Force Applied to Arrest Plaintiff Was Objectively Reasonable in Light of All the Circumstances.**

In order to state a viable claim for excessive force under the Fourth Amendment, a plaintff must allege facts showing the officers (1) seized him under the Fourth Amendment; (2) this seizure was objectively unreasonably, and (3) the officers are not entitled to qualified immunity. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1207 (8th Cir. 2013). As discussed below, Plaintiff has failed to state a valid excessive force claim because the second and third factors cannot be met given the nature of Plaintiff's well-pleaded allegations and considering the materials embraced by the pleadings. As shown by the legal standard above, the Court can and should in the context of this Rule 12 motion review and consider the videos that captured the interactions between Plaintiff and the Officer Defendants on December 31, 2019, culminating in his arrest. As is shown in the videos themselves, and as confirmed by Plaintiff's allegations in his Complaint, Plaintiffs actions leading up to the arrest, and including his active resistance during the arrest itself, confirm the force applied was objectively reasonable, and therefore he has not stated a legally cognizable claim.

Initially, it should be noted that Officer Keyes' dash and body camera videos clearly show there was abundant evidence on which the Officer Defendants based their probable cause arrest[1] of the Plaintiff for the crime of driving under the influence of alcohol ("DUI").[2] While Plaintiff does not claim an "unlawful arrest" but rather claims unconstitutional excessive force, the factors the Officer Defendants observed leading up to the probable cause arrest of Plaintiff are relevant under both the test of *Graham v. O'Connor* and relevant to the totality of the circumstances test for qualified immunity. "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, . . ." *Graham v. Connor*, 490 U.S. at 396-97; *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009) (the court is to consider "(1) whether the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right;").

The North Dakota Supreme Court has provided the probable cause standard for a DUI arrest as follows:

> An arrest must be supported by probable cause. *Jerome,* 2002 ND 34, ¶ 5, 639 N.W.2d 478. "Probable cause to arrest exists when the facts and circumstances within police officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing an offense has been or is being committed." *Hoover v. Director, North Dakota Dept. of Transp.,* 2008 ND 87, ¶ 9, 748 N.W.2d 730. To "determine whether an officer had probable cause to arrest an individual, [this Court examines] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."

---

[1] As discussed in *Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017), "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause."

[2] N.D.C.C. § 39-08-01 is the North Dakota statute that prohibits and prescribes a penalty for operating a motor vehicle under the influence of any intoxicating substance, including alcoholic beverages.

> *Washington,* 2007 ND 138, ¶ 12, 737 N.W.2d 382 (quoting *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003)). "Probable cause to arrest a driver for driving under the influence exists if the police officer (1) observes some signs of physical or mental impairment, and (2) has reason to believe the driver's impairment is caused by alcohol." *Sayler v. North Dakota Dept. of Transp.,* 2007 ND 165, ¶ 19, 740 N.W.2d 94. Detection of the odor of alcohol, observation of signs of impairment, and failure of field sobriety tests are relevant factors in determining probable cause to arrest a driver for driving under the influence of alcohol. *See Kahl v. Director, North Dakota Dept. of Transp.,* 1997 ND 147, ¶ 17, 567 N.W.2d 197.

*City of Devils Lake v. Grove*, 2008 ND 155, ¶ 11, 755 N.W.2d 485, 490 (internal citations and quotations in original). Traffic violations and red, bloodshot eyes are two additional common factors supporting probable cause for a DUI arrest. *Moran v. N. Dakota Dep't of Transp.*, 543 N.W.2d 767, 770 (N.D. 1996) (internal citations and quotations in original).

The Officer Defendants clearly had probable cause to arrest Plaintiff given the observations of physical impairment and the belief the impairment was caused by alcohol. The dash camera and body camera videos confirm Officer Keyes observed that Plaintiff make an illegal left turn wherein he failed to maintain his lane of travel through the turn (dash cam at 00:45; body cam at 1ff:50),³ he then took an unreasonably long time to pull over after Officer Keyes activated his overhead lights and siren (dash cam at 1:25),⁴ and then when he did finally pull over Plaintiff pulled his car over to the center median to the left of the roadway rather than pulling over on the right side of the divided highway (dash cam at 1:50). It is also critical to note that the traffic stop

---

³ N.D.C.C. § 39-10-17 provides in part, "1. A vehicle must be driven as nearly as practicable entirely within a single lane and may not be moved from such lane until the driver has first ascertained that such movement can be made with safety. [. . .] 4. Official traffic-control devices may be installed prohibiting the changing of lanes on sections of roadway and drivers of vehicles shall obey the directions of every such device."

⁴ N.D.C.C. § 39-10-02 provides in part, "No person may willfully refuse to comply with any lawful order or direction of any police officer or firefighter invested by law with authority to direct, control, or regulate traffic."

was conducted at night on New Year's eve at approximately 10:00 pm on a busy road in Williston, ND and traffic continues to pass the location of the stop during the entire stop.

Officer Keyes indicates early on in the video there is an odor of alcohol emanating from the car and from the Plaintiff as soon as he opened the door (body cam at 1:20; 2:20; 6:45), which he again smelled as Officer Keyes accessed the car's glove box for Plaintiff's temporary driver's permit (body cam at 3:00; 6:50). Plaintiff admits to drinking "not much" (body cam at 2:25) and later admits to drinking a "couple beers" (body cam at 6:40). Officer Keyes also indicates in the video that Plaintiff had slow, delayed response, was slurring his speech, and that he had bloodshot and watery eyes (body cam at 2:20; 6:45). The delayed responses and slurred speech are directly observable throughout the entirety of the body camera video. The video also show Plaintiff reaches into his coat and is told by Officer Rintamaki not to reach in his coat (body cam at 6:15). The videos further confirm Plaintiff "hit on 6 out of 6 clues" on the Horizantal Gaze Nystagmus (a/k/a "pen test") (body cam at 9:40) and that he badly failed the heel to toe straight line walk (body cam at 13:10). All of the foregoing confirms Officer Keyes certainly had probable cause (or at the very least arguable probable cause) to make a DUI arrest. Plaintiff apparently concedes there was probable cause or at least "arguable probable cause" for his arrest as the Complaint is silent as to probable cause but concedes "Keyes observed indicia of alchol intoxication." Complaint at ¶ 10.

Most importantly for the analysis, the videos confirm Plaintiff was not compliant and was argumentative with Officers throughout their interactions with him, which became progressively worse, leading up to Plaintiff actively resisting a lawful DUI arrest. As stated, Plaintiff's DUI stop occurred in North Dakota in winter and at night. Plaintiff was wearing a coat, he was near a busy roadway, he was obviously intoxicated, and the video confirms he was not ready, willing or able to listen to the Officers or to comply with their most basic instructions. In short, it was a tense

and rapidly evolving situation. At one point just prior to the arrest, Plaintiff appears to change his demeanor from simply not listening to showing an outright aggressive posture and attitude when he is told there will be another field sobriety test (body cam at 15:00). At that point, he seems to have lost his patience and begins to more aggressively argue about the tests. He turns towards officer Keyes in a threatening manner clenching his fists for a brief moment, and then he states, "You all need to chill the fuck out" (body cam at 15:20). As he continues to argue more aggressively with Officer Keyes about listening, he says to Officer Keyes, "How old are you?" a few times. Just after that, Plaintiff refuses to answer yes or no when asked to perform the last test, the alcohol screening test (body cam at 16:05). The video shows that just moments before the Plaintiff is arrested, Plaintiff continued to argue about the field sobriety testing.

As the situation unfolded, Plaintiff continued to move around on the side of the roadway in an erratic manner near the back of his car as he interacts mainly with Officer Keyes. Just prior to Officers making the arrest, it can also be clearly heard Officer Keyes stating, "Ronald, I'm done arguing with you . . ." (body cam at 16:20), and the Plaintiff yells, "no" and Officer Keyes continues, "put your hands behind your back." All of this occurs in rapid succession while both Officers grab Plaintiff, continuing to give him commands, and all three of them end up on the ground with Plaintiff continuing to resist arrest the entire time by thrashing, by not allowing himself to be handcuffed, and by continuing to try to kick Officers. The command of "stop" continues as Officers try to handcuff the Plaintiff and he continues to swear at them while they are all on the ground. The video also clearly shows Plaintiff aggressively resisting at the point when Officers attempted to grab his arms and commanded multiple times to comply with their commands. They command him to "put your hands behind your back, now. . . put your hands behind your back.. give me your hands, stop resisting. . . stop resisting. . . stop, stop, stop, put your

hands behind your back, stop. . . give us your hands, stop resisting give us your hands, . . ." It is unclear from the video if Plaintiff is really "thrown" to the ground or if the two Officers and Plaintiff simply ended up on the ground due to the scuffle that happened as soon as they tried to grab his arms to make the arrest. Officer Keyes requests an ambulance mere seconds after Plaintiff is taken to the ground (body cam at 17:10) and while Plaintiff is continuing to resist. Once on the ground with Officers trying to hold him down bodily and gain control of him and place handcuffs on hism, the Officers can be heard breathing heavily from their extreme physical exertions (body cam at 17:30). Plaintiff continues to resist, continues to kick, and continues to swear at and threaten the Officers, requiring his legs to be restrained (body cam at 18:00).

The body camera video clearly shows in the seconds leading up to Plaintiff's arrest that he refused to respond to basic questions, acted erratically, and continually questioned the Officers about the sobriety testing. The video confirms Plaintiff continued to argue with Officers throughout their interactions, that he became more aggressive, and at the point of arrest he violently resisted the Officer's commands and violently resisted the force they were applying simply to arrest him for a lawful DUI arrest.

Importantly, Plaintiff's Complaint does not contradict the video evidence, and in fact it is in agreement with the video on several key points, including Officer Keyes making the initial stop because of an "improper turning movement" and then "observ[ing] indicia of alcohol intoxication", and in Officers performing field sobriety testing. *See* Complaint (alleging in part, "7) At approximately 10:00 p.m., Keyes was on patrol. 8) Keyes activated his emergency lights and stopped Young due to an alleged improper turning movement by Young. 9) Young stopped his vehicle, and a traffic stop was conducted by Keyes and Rintamaki. 10) During the stop, Keyes observed indicia of alcohol intoxication. Field sobriety and other DWI-related tests were

conducted by Keyes and Rintamaki."). While the Complaint does take issue with the manner used by Officers Keyes and Rintamaki in arresting him, which Plaintiff's Complaint characterizes as being forcefully grabbed by the arms and being "thrown to the ground", all allegedly without warning, and in a manner that did not allow him to protect himself and causing "lacerations on his face and chin" (Complaint at ¶¶ 13-19), the Complaint does not deny what the video shows: Plaintiff refusing to comply with basic instructions; Plaintiff not listening; Plaintiff arguing with Officers throughout the encounter; Plaintiff moving around unpredictably; and Plaintiff resisting when Officers finally grabbed his arms to effectuate the arrest. Moreover, the Complaint concedes Plaintiff was "commanded" by Officers to "put his hands behind his back" (Complaint at ¶¶12-13), which is clearly heard in the video more than once. The Complaint never alleges Plaintiff did not resist his DUI arrest and does not contradict any of what is shown in the body camera video other than to characterize the force applied as "excessive", which the Court is free to disregard as such allegations are not well-pleaded but rather are mere legal conclusions.

As shown in the applicable legal standard, the Court must evaluate "the reasonableness of the force used from the perspective of a reasonable officer on the scene, not with the benefit of hindsight." *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) (citation omitted). "This evaluation entails careful consideration of the case's particular facts and circumstances, including: '(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396).

To begin with, the totality of the circumstances demonstrate the Officer Defendants had probable cause to arrest Plaintiff for DUI. While DUI is not necessarily a severe crime, Plaintiff did objectively pose an immediate threat to the safety of the Officers (and other drivers near the

arrest location), and Plaintiff actively and violently resisted his arrest at the point in time when the Officers grabbed his arms. For these reasons, the force applied was objectively not excessive. While Plaintiffs Complaint seems to suggest his belief that Officers should have given some kind of advanced warning prior to the arrest or prior to "throwing him to the ground", neither North Dakota law[5] nor controlling federal case law require such advanced notice of the officer's intention to arrest be given. *Johnson v. City of Minneapolis*, 901 F.3d 963, 969 (8th Cir. 2018) (stating, probable cause to arrest requires "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person ... in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.") (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37, (1979)). Once there is probable cause to make the arrest, the arrest can be lawfully made and no advanced warning is required. Moreover, Plaintiff concedes in the Complaint that he was commanded by Officers to put his hands behind his back, which did serve as a warning to Plaintiff that was continued through the rest of the encounter, in addition to other warnings and commands like "stop" and "stop resisting".

But obviously the main contention by Plaintiff of unlawfullness is not the lack of an announced intent to arrest the Plaintiff. Rather, Plaintiff contends the manner of the physical act of the arrest itself (allegedly throwing Plaintiff to the ground) amounts to excessive force. Bear in mind the Plaintiff does not deny he failed to comply with many, many simple directions, that he was argumentative throughout his interactions with law enforcement, and that he resisted the Officers as they attempted to grab his arms. The video evidence confirms he did all of this, and indeed confirms he resisted Officers at the point of arrest and he did so violently and aggressively.

---

[5] North Dakota's arrest statute, N.D.C.C. § 29-06-01, does not require any advanced warning prior to the arrest.

"When an arrestee flees or resists, some use of force by the police is reasonable." *Awnings v. Fullerton*, 912 F.3d 089, 1100 (8th Cir. 2019) (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1366 (8th Cir. 1994) (citing *Foster v. Metro Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990)).[6]

In the context of the rapidly evolving situation with the Plaintiff, and focusing on the manner of the Officer Defendants grabbing the Plaintiff and taking him to the ground as he actively resisted (or even assuming arguendo they threw him to the ground as he resisted), confirms the actions of the Officers were objectively reasonable. Indeed, in *Hosea v. City of St. Paul*, 867 F.3d 949, 958-59 (8th Cir. 2017), decided prior to Plaintiff's instant arrest in 2019, the Eighth Circuit Court of Appeals held the act of an officer who tackled and jumped on the back of a domestic violence suspect causing him injuries was objectively reasonable under the totality of the circumstances, especially since the officer could have objectively believed the suspect might cause bodily harm to another person at the home where the arrest occurred. This was despite the fact the plaintiff contended and the court assumed as true that plaintiff arrestee was complying with officer's commands at the point he was essentially tackled by an officer. *Id.* Other Eighth Circuit case law confirms the conduct of the Officer Defendants in this case is objectively reasonable and protected by qualified immunity.[7]

---

[6] North Dakota law also makes Plaintiff's actions of resisting arrest a crime. N.D.C.C. § 12.1-08-02. The statute states in part: "A person is guilty of a class A misdemeanor if, with intent to prevent a public servant from effecting an arrest of himself or another for a misdemeanor or infraction, or from discharging any other official duty, he creates a substantial risk of bodily injury to the public servant or to anyone except himself, or employs means justifying or requiring substantial force to overcome resistance to effecting the arrest or the discharge of the duty."

[7] *Fischer v. Hoven*, 925 F.3d 986, 989-90 (8th Cir. 2019) (deputy did not use excessive force, and was entitled to qualified immunity, by executing an arm-bar takedown against misdemeanant [disorderly conduct] to restrain and handcuff suspect who appeared to be resisting arrest, even though such resulted in suspect suffering broken bones in her hand, arm, nose, a broken tooth, and a facial cut – the arm-bar takedown is a common technique to restrain individuals); *Ehlers v. City*

In the case at bar and like the officer in *Hosea*, the Officer Defendants could have reasonably believed Plaintiff's erratic behavior and his refusal to comply with or listen to basic commands and instructions put Plaintiff's own life in danger so near the roadway at night, put the lives of other driver's in danger if Plaintiff tried to flee on foot at the time of arrest, and also put the Officers themselves in danger and in fear for their own safety on the side of the roadway at night. All of this confirms the force applied was objectively reasonable and Plaintiff has failed to assert a plausible excessive force claim. It should also be considered that prior to the arrest, the video confirms (and Plaintiff does not deny) that Plaintiff had not been patted down for weapons or contraband. Nor does the Complaint deny that Plaintiff was physically larger and taller than either of the Officer Defendants as confirmed by the video, which would have given the Officers even more incentive to arrest the Plaintiff, taking control of an unpredictable and potentially dangerous situation. Plaintiff's de minimis injuries (lacerations on his face and chin from his broken glasses), while not a dispositive factor, further confirms the force applied was not excessive.

Given the allegations in Plaintiff's Complaint and considering the video evidence embraced by the pleadings, Plaintiff has at most plead that the Officer Defendants were negligent during the arrest (which the Officer Defendants deny is true). But the controlling case law holds negligence is not enough for a bona fide Constitutional violation. *Young*, 249 F.3d at 734

---

*of Rapid City*, 846 F.3d at 1002 (8th Cir. 2017) (use of spin take-down to apprehend and arrest nonviolent misdemeanant did not constitute excessive force – arrestee was noncompliant with officer's commands, thereby appearing to be resisting, and officer was entitled to use force necessary to effect the arrest). *Cf. Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1209-14 (8th Cir. 2013) (plain clothes police chief was not entitled to qualified immunity on excessive force claim where, without identifying himself as a police officer or displaying a badge, he bull rushed plaintiff, slamming the plaintiff ten to fifteen feet back into the side of a pickup truck and resulting in severe injuries – plaintiff was not resisting *or evading arrest by flight*, or posing a threat to anyone (emphasis added)).

(negligence insufficient to support Section 1983 excessive force claim). The factors of the safety of the Officers themselves on the side of the roadway at night and the actions of the Plaintiff in actively resisting his arrest, together with the totality of the rest of the circumstances, confirm the force applied was objectively reasonable. For the same reasons, the Officer Defendants did not violate Plaintiff's constitutional rights, which supports their qualified immunity defense.

> **B.     There Was No Existing Precedent as of December 31, 2019 To Put the Officer Defendants on Notice Their Actions Were Unlawful.**

As indicated, no unconstitutional force was applied to the Plaintiff during his arrest. Thus the first factor of the qualified immunity analysis is satisfied. The second factor is also satisfied here. Again, the following standard applies to qualified immunity:

> We apply a two-part test to determine the applicability of qualified immunity. *Clayborn v. Struebing*, 734 F.3d 807, 809 (8th Cir. 2013). "First, 'whether the facts alleged, construed in the light most favorable to [Hosea], establish a violation of a constitutional or statutory right,' and second, 'whether that right was clearly established at the time of the alleged violation, such that a reasonable [officer] would have known that [the] actions were unlawful.' " *Id.* (quoting *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011)).

*Hosea*, 867 F.3d at 955 (citations and quotations in original). As shown by the case law cited above, there is no clearly established, existing precedent establishing it violates constitutional rights to throw to the ground an arrestee who is actively resisting arrest. Nor is there any existing precedent to establish it violates Plaintiff's constitutional rights to apply the weight of the body of the arresting officer (or even both officers) to the body of the arrestee to facilitate an apprehension and arrest, especially where the arrestee continues to resist the arrest, to struggle against arresting Officers, and to swear at and threaten them. Plaintiff has not alleged the Officer Defendants utilized any weapon or less lethal force against him, nor was any weapon or less lethal force utilized. There is simply no existing precedent which establishes beyond debate the

unconstitutionality of the Officer Defendants' alleged conduct in this case, and they are therefore entitled to qualified immunity.

## V.    CONCLUSION

For the foregoing reasons, Defendants request Plaintiff's Complaint against them be in all things dismissed, with prejudice, due to Plaintiff's failure to state a cognizable excessive force claim and due to the doctrine of qualified immunity.

Dated this 5th day of December, 2023.

                                          BAKKE GRINOLDS WIEDERHOLT

By: */s/ Bradley N. Wiederholt*
     Randall J. Bakke (#03989)
     **Bradley N. Wiederholt (#06354)**
     300 West Century Avenue
     P.O. Box 4247
     Bismarck, ND 58502-4247
     (701) 751-8188
     rbakke@bgwattorneys.com
     bwiederholt@bgwattorneys.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2023, a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** was filed electronically with the Clerk of Court through ECF.

ATTORNEY FOR PLAINTIFF:

    Dane DeKrey (#09524)
    Ringstrom DeKrey PLLP
    814 Center Avenue, Ste. 5
    P.O. Box 853
    Moorhead, MN 56561-0853
    dane@ringstromdekrey.com

                                          By: */s/Bradley N. Wiederholt*
                                                 BRADLEY N. WIEDERHOLT