IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

Civil No. 1:23-cv-00174

| | |
|---|---|
| Ronald Edward Young, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) **DEFENDANTS' REPLY** |
| | ) **MEMORANDUM IN SUPPORT OF** |
| Eric Keyes, acting in his individual capacity as a Williston police officer, and Nick Rintamaki, acting in his individual capacity as a Williston police officer, | ) **MOTION TO DISMISS** ) ) ) ) ) |
| Defendants. | ) ) |

\*\*\*            \*\*\*            \*\*\*

## I.    INTRODUCTION

In his Response,[1] Plaintiff does not dispute that the video footage from Officer Keyes' squad car (Doc. 9-1) and body camera (Doc. 9-2) may be considered by the Court in deciding Defendants' motion to dismiss (Doc. 7). While Plaintiff contends he did not need to assert in his Complaint that he did not resist arrest, the Complaint is clearly silent as to that issue, and the video footage confirms Plaintiff's lack of cooperation and argumentativeness leading up to his arrest, and also confirms Plaintiff's active resistance during the arrest itself. The video further shows the force applied by Officers Keyes and Rintamaki to effectuate the arrest was objectively reasonable under the circumstances given the potential for harm to the Officer Defendants, harm to the traveling public, and harm to the Plaintiff himself. In sum, no reasonable juror could conclude

---

[1] *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings* (Doc. 13) is herein referred to as Plaintiff's "Response." Defendants Keyes and Rintamaki ("Officer Defendants") continue to rely on the facts, legal support, and arguments raised in their *Memorandum Of Law In Support Of Defendants' Motion To Dismiss* (Doc. 8).

based on the pleadings and materials appropriately embraced by the pleadings (the videos) that Officers Keyes and Rintamaki used excessive force during Plaintiff's arrest and thus Plaintiff has failed to state a cognizable claim for Section 1983 relief. Nor did Officers Keyes' and Rintamaki's actions violate any of Plaintiff's clearly established constitutional rights of which they had notice, and they are therefore entitled to qualified immunity from suit.

## II.   DISCUSSION

In his Response, Plaintiff argues the allegations and dash/body camera videos confirm Officer Defendants used unreasonable force in effectuating his December 31, 2019 DUI arrest in violation of Plaintiff's Fourth Amendment rights.  It is interesting to note that Plaintiff argues – based on the same video footage the Officer Defendants filed with the Court – that the "officers' demeanor grew increasingly confrontational. . ," that "Ronald was trying to get information[,]" that "it was the officers, not Ronald, who refused to clear up his confusion[,]" and that they therefore "escalated the situation by resorting to unlawful force."  Response at 6-7.  As part of the same theme, Plaintiff argues it is his "position [] that he did not physically resist the officers in any way."  Response at 7.  Plaintiff further contends: "Defendants' claims also contradict the video, which shows that the officers were the ones unwilling to listen and only commanded Ronald to comply with an arrest after he was *already grabbed* and being taken to the ground."  *Id.* at 8 (emphasis in original).

To this last point about "Defendants' claims" contradicting the videos, the legal standard allows the Court to consider materials like the videos if they: "(1) are part of the public record, (2) do not contradict the complaint, or (3) are necessarily embraced by the pleadings."  *See*, *Ching v. City of Minneapolis*, 629 F. Supp. 3d 925, 933 (D. Minn. 2022) (internal quotations and citations omitted), rev'd and remanded sub nom. *Ching as Tr. for Jordan v. City of Minneapolis*, 73 F.4th

617 (8th Cir. 2023) (reversing district court's denial of qualified immunity to one of the officer defendants). Again, the Complaint is silent as to Plaintiff's non-cooperativeness, his argumentativeness, and his resistance to his lawful arrest. Thus, to the extent the videos show such actions – which Officer Defendants contend they clearly do – the videos do not contradict the well-pleaded allegations that are entirely silent as to these issues and the video may be considered by the Court. In relation to Plaintiff's attempt to characterize the December 31, 2019 interaction with law enforcement quite differently than what the videos show, Officer Defendants will not attempt a point by point refutation of Plaintiff's characterization of his actions or those of the Officer Defendants. Rather, the well-pleaded allegations in the Complaint and the videos themselves (which do not contradict the well-pleaded allegations) together clearly show the salient facts the Court must analyze as part of this motion.

Plaintiff's arguments notwithstanding, the Officer Defendants trust the Court's review of the videos will showcase Plaintiff's decided lack of cooperation and his continual argumentativeness throughout his interaction with law enforcement, all of which culminated in quite obvious active resistance to a lawful DUI arrest. Officer Defendants further trust the Court's review of the videos will showcase the potential harm to members of the travelling public, and the potential harm to the Officer Defendants as well as to the Plaintiff, all of whom were so near to the side of a divided highway at night. There can be no question the situation confronting the Officer Defendants that night was "tense, uncertain, and rapidly evolving" all of which shows their conduct in effectuating the arrest was objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

The Officer Defendants contend that the allegations here are akin to the facts in and thus controlled by *Kelsay v. Ernst*, 933 F.3d 975 (8th Cir. 2019) (officer executed a "bear hug" take

down of anon-compliant female arrestee who was approaching another swimming pool patron in a somewhat threatening manner) and in *Ehlers v. City of Rapid City*, 846 F.3d 1002 (8th Cir. 2017) (officer executed a "spin takedown" of non-violent misdemeanant who was not compliant with officer's commands), both cases where the challenged conduct was held to be objectively reasonable and where qualified immunity was held to shield the officers' actions. It is the Officer Defendants' position that Plaintiff has failed to allege facts showing the officers (1) seized him under the Fourth Amendment; (2) the seizure was objectively unreasonably, and (3) the officers are not entitled to qualified immunity. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1207 (8th Cir. 2013). Specifically, Plaintiff has failed to allege facts sufficient to show the objective unreasonableness of the Officer Defendants' actions and that they are not entitled to qualified immunity.

In addition to Plaintiff's failure to allege a viable excessive force claim as discussed above, Plaintiff has also failed to show that Officers Keyes and Rintamaki are not entitled to qualified immunity. In this regard, Plaintiff misstates the import of Eighth Circuit case law, when he relies on *Montoya v. City of Flandreau*, 669 F.3d 867 (8th Cir. 2012) for the proposition that the Officer Defendants should have been on notice that the force they used was objectively unreasonable and thus unconstitutional. Response at pp. 5-6, 11. Plaintiff is simply incorrect in his reading of that case. The circumstances leading up to the arrest of the plaintiff in *Montoya*, and the force used by the arresting officers in that case are markedly different from those in the instant case. *Montoya* does not control on the question whether the force Defendants used in arresting Plaintiff was objectively reasonable.

For example, the plaintiff in *Montoya* alleged the following sequence of events leading up to her arrest:

> [Montoya] and [her ex-boyfriend], along with her mother, a friend of hers, and the two officers, were all standing in a circle. [The ex-boyfriend] was standing between the two officers while she was standing opposite of them, at a distance of about ten to fifteen feet. []
>
> [Montoya continued:] [my ex-boyfriend] and me were having words. I was looking over to my left and I'm thinking we were in a circle. [The officers] said, they stated that I took a step forward and raised my fist. I would like to say that when I do talk, I use my hands in motion to express myself.
>
> [. . .]
>
> [Officer Hooper] came and took my left arm. Put it behind my back [and handcuffed my left wrist]. At that time [Officer] Gaalswyk came over to my right side and attempted to get my right arm behind. Stated quit or stop resisting. Then [Officer] Hooper came around with his right leg. Kicked my left leg. In turn, I fell straight to the ground forward. . . . Face first. [Officer Hooper] fell on top of me. Then I immediately screamed . . . [a]nd said my leg is broke[n].

669 F.3d at 869.

The *Montoya* district court granted summary judgment in favor of the plaintiff against the arresting officers, and the Eighth Circuit Court of Appeals reversed, reasoning, "Based on the physical distance between Montoya and Cournoyer at the time of the incident (ten to fifteen feet), the nature of the crime at issue (disorderly conduct), and the degree of the injury suffered (a broken leg), we cannot say the force used by Officer Hooper was objectively reasonable as a matter of law. Accepting Montoya's version of events as true, as we must under the present procedural posture, we conclude genuine issues of material fact exists as to whether Officer Hooper used excessive force against Montoya." *Id.* at 872.

In the present case, unlike *Montoya*, Plaintiff exhibited increasingly noncompliant and argumentative behavior with the officers in the several minutes leading up to the arrest. As is clearly shown in the video footage and not contradicted by the Complaint, Plaintiff failed to comply with numerous of the Officer Defendants' basic instructions once he had exited his vehicle and then throughout the several more minutes as field sobriety tests were performed.  Also, unlike

5

the plaintiff in *Montoya*, Plaintiff here continually argued with the Officer Defendants regarding the field sobriety testing they were conducting and his manner became more threatening just prior to the arrest. Plaintiff escalated his aggressive behavior by clenching his fists and telling Officer Keyes "You all need to chill the fuck out." At this point in time, Plaintiff was standing close to both Officers near the back of his parked car.  As the Officer Defendants then began the arrest of the Plaintiff – now all parties being mere inches away from each other – Officer Keyes stated, "Ronald, I'm done arguing with you," and Plaintiff responded by yelling "No," further confirming Plaintiff's refusal to comply with the arresting officer's commands.

There is no doubt, Plaintiff was in much closer physical proximity to the Officers than the plaintiff was in *Montoya*.  He and the Officers were also mere feet away from a roadway and thus to members of the public traveling in cars that night.  In other words, he was a risk to the public in that a sudden dash into the roadway could have caused an accident and potentially injuries to the public.  He was likewise a risk to himself if he should struck by a car if he had dashed into the roadway.  Additionally, Plaintiff's close proximity to the Officer Defendants and his size and apparent aggressiveness and non-cooperativeness (unlike *Montoya*) made him a real threat to the Officers themselves.[2]  While DUI is not a serious crime per se and is generally a misdemeanor offense under North Dakota law, it involves by its nature impairment of the senses and sometimes of the rational faculties, making an alcohol impaired person unpredictable and potentially dangerous, and the interaction with the impaired driver oftentimes happens at night on a busy

---

[2] *See Ehlers v. City of Rapid City*, 846 F.3d at 1009 ("Thus, it is not unreasonable that [officer] Hansen would interpret Ehlers's physical presence, close proximity, and refusal to comply as threatening and preventing him from completing the task at hand." ).

roadway.[3]

All of this is in stark contrast to the allegations in *Montoya*, where the arrestee's aggression (or hand gesture) was aimed at a non-law enforcement individual (the ex-boyfriend) who was standing ten to fifteen feet away when the arresting officers applied force against her. *Montoya*, 669 F.3d at 869. Further, there is no indication Montoya herself had been increasingly aggressive or noncompliant with the officers leading up to the arrest—rather, the arresting officers applied force against her due to her action of raising her arm, which the officers interpreted as her preparing to strike her ex-boyfriend. *Id.* at 870. Nor is the degree of injury in *Montoya* similar to the case at bar (i.e., lacerations on his face and chin from his broken glasses). The plaintiff in *Montoya* sustained a tibial plateau fracture to her left knee as a result of the force the arresting officers used against her, which required surgery. *Id.* at 870. She also had to undergo physical therapy, and required crutches to walk for four to five months. *Id.* Whether force used to effectuate an arrest is objectively reasonable "depends on the facts and circumstances of the case" and includes an evaluation of "the extent of the suspect's injuries." *Rohrbough v. Hall*, 586 F.3d 582, 586 (8th Cir. 2009) (citation omitted). Clearly, the Eighth Circuit believed the injuries Montoya sustained were indicative of a high and unnecessary level of force used against her under the circumstances presented to the officers. Contrast *Montoya* with the degree of injury to the Plaintiff in the case at

---

[3] The contention by Plaintiff that the misdemeanor DUI does not support the level of force used is also wrong. *Ehlers*, 846 F.3d at 1011 ("Officer Dirkes's dash camera video shows Dirkes approach Ehlers, point to him, and twice order him to put his hands behind his back. Instead of complying, Ehlers continued walking towards the Civic Center, passing Dirkes closely as Dirkes gave the instruction a second time. A reasonable officer in Dirkes's position would interpret this behavior as noncompliant. **Thus, Ehlers's argument that no force was appropriate because he was being arrested for a nonviolent misdemeanor and was not resisting is inapplicable because he at least appeared to be resisting**." (emphasis added)).

bar is only slight ("Young's glasses were broken. Young also sustained lacerations on his face and chin." Complaint (doc. 1) at ¶19).

Plaintiff's reliance on *Montoya* to support his assertion that the Officer Defendants used excessive force during his arrest and his argument that they are not entitled to qualified immunity, are misplaced. Certainly, *Montoya* does not provide the existing precedent required to defeat qualified immunity. Plaintiff has simply failed to show any clearly established, existing precedent at the time of his arrest establishing it violates constitutional rights to throw to the ground an arrestee who is continually non-compliant with officers and then actively resists arrest, all of which happened next to a divided highway at night. Plaintiff's allegations are inadequate to state a viable excessive force claim, and the Officer Defendants are entitled to qualified immunity.

### III. CONCLUSION

Because the alleged force utilized was objectively reasonable and because Defendants' conduct did not violate Constitutional standards of which they were aware, Plaintiff has failed to state a cognizable excessive force claim and Defendants are entitled to qualified immunity from suit. For the foregoing reasons, and the reasons described in Defendants' principal memorandum, Defendants request Plaintiff's Complaint against them be in all things dismissed, with prejudice.

Dated this 12th day of January, 2024.

                                BAKKE GRINOLDS WIEDERHOLT

                                By: */s/ Bradley N. Wiederholt*
                                     Randall J. Bakke (#03989)
                                     **Bradley N. Wiederholt (#06354)**
                                     300 West Century Avenue
                                     P.O. Box 4247
                                     Bismarck, ND 58502-4247
                                     (701) 751-8188
                                     rbakke@bgwattorneys.com
                                     bwiederholt@bgwattorneys.com

                                                    Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 12, 2024, a true and correct copy of the foregoing **REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** was filed electronically with the Clerk of Court through ECF.

ATTORNEY FOR PLAINTIFF:

    Dane DeKrey (#09524)
    Ringstrom DeKrey PLLP
    814 Center Avenue, Ste. 5
    P.O. Box 853
    Moorhead, MN 56561-0853
    dane@ringstromdekrey.com

                                        By:   */s/Bradley N. Wiederholt*
                                                      BRADLEY N. WIEDERHOLT